UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80746-Civ-Brannon

BOARD OF TRUSTEES OF THE
NATIONAL ELEVATOR INDUSTRY
HEALTH BENEFIT PLAN,

      Plaintiff,

v.

ROBERT MONTANILE,

      Defendant.

_____/



FILED by _____ D.C.

MAR 17 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Plaintiff's suit for the reimbursement of funds it expended to cover Defendant's accident-related medical expenses from the proceeds of Defendant's later settlement with a third-party tortfeasor. The parties agree that this case is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and the parties have cross-moved for summary judgment (DE 35 & DE 36). Both motions are fully briefed and ripe for review. For the following reasons, the Court finds that Plaintiff is entitled to summary judgment and Defendant is not.

I.    STANDARD OF REVIEW

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the

1

case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). In making this determination, a court must review all evidence and draw all reasonable inferences in favor of the non-moving party. Chapman v. AI Trans., 229 F.3d 1012, 1023 (11th Cir. 2000). The court will not weigh the evidence or find facts; rather, it determines only if there is sufficient evidence upon which a reasonable juror could find for the non-moving party. Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003).

Cross-motions for summary judgment do not change the standard and a court must consider each such motion separately. American Bankers Ins. Group v. U.S., 408 F.3d 1328, 1331 (11th Cir. 2005); Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297–98 (M.D. Fla. 2008). Each moving party carries the initial burden of proof and meets this burden by identifying portions of the record that demonstrate the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322–24. Once the initial burden is satisfied, the burden shifts to the opposing party to demonstrate through the production of probative evidence that there remains a genuine issue of fact to be tried. Id.

## II.   STATEMENT OF FACTS

The facts of this case are largely undisputed. Plaintiff Board of Trustees is the named fiduciary and administrator of the National Elevator Industry Health Benefit Plan ("Plan") (DE 36 at 1). The Plan is an "employee welfare benefit plan" as that term is defined in ERISA (Id.). At all relevant times, Defendant was a covered employee under the Plan (Id. at 2).

The parties have filed three documents relating to the Plan. The first document—a "Restated Agreement and Declaration of Trust" dated May 20, 1976 ("Declaration of Trust")— contains a section titled "Plan of Welfare Benefits" stating:

Benefits. The Trustees shall have full discretionary authority to adopt a Plan of Welfare Benefits, which sets forth eligibility requirements, type, amount, and duration of benefits that are to be provided to eligible employees, based on what is actuarially determined to be within the financial limitations of the National Elevator Industry Welfare Plan, provided, however that no benefits, other than welfare benefits, may be provided for or paid under this Agreement and Declaration of Trust
...
Written Plan of Benefits. The detailed basis on which payment of benefits is to be made ... shall be set forth in the Plan of Welfare Benefits.  Such Plan of Welfare Benefits shall be subject to amendment by the Trustees from time to time as they may, in their discretion, determine...

(DE 36-2 at 33-34).  The second document—the "National Elevator Industry Health Benefit Plan Summary Plan Description" with an introductory letter dated January 2005 ("SPD") —contains a section titled "Other Party Liability Claims" stating:

**The Plan's Right of Recovery**
The Plan has the right to recover benefits advanced by the Plan to a covered person for expenses or losses caused by another party.  If a covered person is injured or becomes ill under circumstances where another party is directly or indirectly liable for the illness or injury, the Plan is only obligated to provide covered benefits resulting from that illness or injury that exceed any amounts recovered from another party (whether or not the amount is recovered is designated to cover medical expenses).

Amounts that have been recovered by a covered person from another party are assets of the Plan by virtue of the Plan's subrogation interest and are not distributable to any person or entity without the Plan's written release of its subrogation interest.  However, amounts recovered by such covered person from another party in excess of benefits paid by the Plan are the separate property of such covered person.  Unless otherwise noted in this SPD, amounts received from an individual health insurance policy for which the injured covered person or other family member has paid premiums are also the separate property of the covered person.
...

**The Plan's Right of Reimbursement**
The Plan has a right to first reimbursement out of any recovery.  Acceptance of benefits from the Plan for an injury or illness by a covered person, without any further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, will promptly be

applied first to reimburse the Plan in full for benefits advanced by the Plan due to the injury or illness and without reduction for attorneys' fees, costs, expenses or damages claimed by the covered person, and regardless of whether the covered person is made whole or recovers only part of his/her damages.

Acceptance of benefits from the Plan for an illness or injury by a covered person constitutes the covered person's agreement to file a claim for benefits against any party who is liable for the injury or illness to the covered person and to file claims under any and all applicable policies of insurance or self-insurance, including but not limited to homeowners insurance, auto insurance, or any liability policy held for a public or commercial entity. The covered person must promptly file a claim for damages against any party liable and any such applicable policy and notify the Plan of his/her claim against such parties or policies or other recovery efforts. The covered person agrees that neither he/she nor anyone acting on his/her behalf will settle any claim relating to the injury or illness without the written consent of the Plan. The Plan reserves the right to make all decisions with respect to its rights of subrogation and recovery.

(DE 36-4 at 26). The third document—the "National Elevator Bargaining Association Agreement with International Union of Elevator Constructors July 9, 2007 to July 8, 2012" ("Bargaining Association Agreement")—contains a section titled "Health Benefit Plan" stating:

The Health Benefit Plan covering life insurance, sickness and accident benefits, and hospitalization insurance, or any changes thereto that are in accordance with the National Elevator Industry Health Benefit Plan and Declaration of Trust, shall be a part of this Agreement and adopted by all parties signatory thereto.

(DE 35-3 at 42).

On December 1, 2008, Defendant was injured in a car accident involving a drunk driver, and the Plan paid $121,044.02 to cover the cost of his medical expenses (DE 1 at 2; DE 36 at 2-3; DE 39-3, Montanile Aff. ¶ 2). Defendant later retained counsel to pursue compensation for his accident-related injuries in the form of a civil negligence suit against the other car's driver and ultimately obtained a $500,000 settlement (DE 35 at 2; DE 39 at 3; DE 39-3, Montanile Aff. ¶ 5). In accordance with its fiduciary duty to enforce Plan terms, Plaintiff asserted a right to be reimbursed for the medical expenses paid on Defendant's behalf out of the settlement proceeds

4

and the parties attempted, through counsel, to negotiate a resolution from June 2011 through January 2012 (DE 39-3, Montanile Aff. ¶ 8; DE 35-2, King Aff. ¶¶ 3-5).  After a resolution could not be reached, on July 11, 2012, Plaintiff filed the instant single-count ERISA suit to enforce the reimbursement provision in its Plan (DE 1).

III.     ANALYSIS

ERISA authorizes a plan fiduciary to bring a civil action "to obtain … appropriate equitable relief" to enforce the terms of a plan.  29 U.S.C. § 1132(a)(3)(B).  In a recent case, the Supreme Court reaffirmed its prior holding that a health plan fiduciary like Plaintiff may bring suit under § 1132(a)(3)(B) to enforce a provision for reimbursement.  US Airways, Inc. v. McCutchen, 133 S. Ct. 1537, 1545 (2013).  Such a claim, the Supreme Court explained, is the modern-day equivalent of an action in equity to enforce a contract-based lien—called an "equitable lien 'by agreement.'" Id. (quoting Sereboff v. Mid Atlantic Medical Servs., Inc., 547 U.S. 356, 364–65 (2006)).

Two disputed legal issues emerge from the parties' summary judgment briefing:  (1) whether the Summary Plan Description's "Other Party Liability Claims" provision ("OPL") creates an enforceable right to reimbursement from Defendant's post-accident settlement proceeds, and (2) if so, whether such reimbursement is "appropriate equitable relief" under ERISA.

*1.     Plaintiff's Right to Reimbursement*

Plaintiff satisfies the basic requirements for seeking relief under 29 U.S.C. § 1132(a)(3)(B).  Plaintiff is an ERISA "fiduciary" seeking—as in McCutchen and Sereboff— relief that is "equitable" in nature.  In its fiduciary capacity, Plaintiff relies upon the OPL in the Summary Plan Description as creating a valid and enforceable right to reimbursement.

Defendant contends that the Summary Plan Description is not a governing plan document, and thus its OPL provision cannot be relied upon to establish a right not otherwise included in what Defendant views as the only two governing plan documents—namely, the Declaration of Trust and the Bargaining Association Agreement.

The Court readily finds for Plaintiff on this first issue. ERISA defines summary plan descriptions as one of many plan documents that plan administrators must provide to plan participants. 29 U.S.C. § 1024; Alday v. Container Corp. of Am., 906 F.2d 660, 665 (11th Cir. 1990). ERISA mandates that summary plan descriptions "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C.A. § 1022(a); see also McKnight v. Southern Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985)("ERISA provides that the summary shall be an accurate and comprehensive document that reasonably apprises the employees of their rights under the plan."). The Eleventh Circuit has held that the terms of a summary plan description that "clearly functioned as the plan document required by ERISA" and unambiguously conferred on the employer the right to modify a medical insurance plan were controlling to the exclusion of other plan-related communications. Alday, 906 F.2d at 666.

Defendant's argument that the Summary Plan Description is not an enforceable plan document is unavailing. Importantly, the Summary Plan Description supplements and is not in conflict with the other two Plan documents of record. Both the Declaration of Trust and the Bargaining Association Agreement expressly refer to a separate document that contains more detailed information about the nature and scope of benefits available to Plan participants. See DE 36-2 at 33 ("The Trustees shall have full discretionary authority to adopt a Plan of Welfare

Benefits, which sets forth eligibility requirements, type, amount, and duration of benefits …");
DE 35-3 at 42 ("The Health Benefit Plan covering life insurance, sickness and accident benefits, and hospitalization insurance, or any changes thereto that are in accordance with the National Elevator Industry Health Benefit Plan and Declaration of Trust, shall be a part of this Agreement and adopted by all parties signatory thereto."). Despite the references to different document titles—*i.e.*, "Plan of Welfare Benefits" and "Health Benefit Plan"—the Summary Plan Description is the only document out of the trio of documents that fits the bill of the separate benefit Plan document contemplated by the other two. The Summary Plan Description is also the only document that clearly sets out the parties' rights and responsibilities concerning health benefit eligibility and coverage, including but not limited to Defendant's right to receive medical benefits in the first place.

Undisputed affidavit testimony supports the conclusion that the Summary Plan Description is a governing plan document. Plaintiff submits two affidavits by its Director of Health Claims Administration, John McGowan, averring that the Plan was created by the Declaration of Trust and that, pursuant to the terms in the Declaration of Trust, Plaintiff approved the Summary Plan Description for administration as the only formal Plan document setting forth the rights and benefits of Plan participants. (DE 36-1, McGowan Aff. ¶¶ 4, 6-9; DE 41-1, McGowan Supp. Aff. ¶ 4). Defendant offers no factual evidence to dispute or otherwise challenge these averments.

Viewing the undisputed evidence as a whole, including the documents and Mr. McGowan's unchallenged affidavit statements, the Summary Plan Description is clearly contemplated by the other two documents and is the only document containing the requisite information about eligibility requirements, type, amount, and duration of benefits for Plan

participants.  There can be no doubt that the Summary Plan Description functioned as both the governing Plan document and the summary plan description mandated by ERISA.  In plain language, the Summary Plan Description's OPL clearly notifies Defendant and other Plan participants of Plaintiff's right to be reimbursed from any settlement proceeds recovered from a liable third party.  Neither the Declaration of Trust nor the Bargaining Association Agreement contain any language to contradict this express right to reimbursement and a reasonable person in Defendant's position would have expected to reimburse Plaintiff.  As the saying goes, what is good for the goose is good for the gander.  Just as Defendant and other Plan participants were entitled to justifiably rely on the Summary Plan Description's provisions for medical benefit coverage, Plaintiff is entitled to rely on the Summary Plan Description's provision for reimbursement as a condition tied to such coverage.

Defendant cites Cigna Corp. v. Amara, 131 S.Ct. 1866 (2011) for the proposition that a summary plan description can never serve as an ERISA plan document.  Cigna does not sweep so broadly.  There, several Cigna employees on behalf of 25,000 beneficiaries challenged Cigna's adoption of a new contribution plan on grounds that the summary plan description and prior Cigna announcements describing the plan were inaccurate and misleading.  Id. at 1870-71.  After finding that Cigna's inaccurate disclosures violated ERISA, a federal district court reformed the plan's terms and ordered benefit payments under the judicially reformed plan.  Id.

The Supreme Court reversed, finding that reformation was not an available remedy under ERISA's recovery-of-benefits-due provision, 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan beneficiary to bring a civil action to recover benefits due under plan terms.  Id.  In so ruling, the Supreme Court rejected an argument that the terms of summary plan descriptions "may be enforced ... as the terms of the plan itself[,]" holding instead that "summary documents,

8

important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § [1132](a)(1)(B)." Id. at 1877-78 (emphasis in original). At the core of this holding is the requirement that there be a conflict between the language of a summary plan description and a controlling plan document before the summary plan's terms can be ignored or overridden. Here, no such conflict exists. Unlike the summary communications at issue in Cigna, the SPD in this case did not inaccurately describe plan information or add new inconsistent terms. The Declaration of Trust authorized Plaintiff to establish a health benefit plan, which Plaintiff did when it approved the Summary Plan Description. Since the Summary Plan Description and other Plan documents are not in conflict, the important policy of protecting Plan members from inaccurate information—a policy concern of great import in Cigna—is not implicated here. As the only Plan document that describes in detail the nature and extent of health benefits coverage, the Summary Plan Description is a governing ERISA plan document and the unambiguous OPL, in effect at the time of Defendant's accident, provides Plaintiff with the right to seek reimbursement from Defendant's post-accident settlement proceeds. To conclude otherwise would be contrary to the purpose and spirit of ERISA.

Defendant makes two additional arguments, both of which merit only brief discussion. First, Defendant contends the OPL is unenforceable because the Declaration of Trust requires that any plan amendments, such as the Summary Plan Description provision for reimbursement, be actuarially based. A plain reading of the Declaration of Trust reveals, however, that consultation with an actuary to determine if a proposed amendment is "actuarially within the financial limitations" of the Plan is required only in the case of an "amendment that increases the amount of the benefits or adds additional benefits." (DE 36-2 at 34). No party asserts that the

OPL increased or added benefits; indeed, the OPL did just the opposite by requiring that the Plan be reimbursed out of any third-party recovery. Thus, this argument fails.

Second, Defendant contends that the OPL is unenforceable based on Plaintiff's failure to ensure compliance with ERISA's anti-inurement provisions or otherwise provide Defendant with information about how Plaintiff will distribute any funds recovered from Defendant. Defendant's argument in this regard is misplaced. The Court is unaware of any authority, and Defendant has cited none, that conditions Plaintiff's ERISA claim for reimbursement on Plaintiff's demonstrated compliance with ERISA's anti-inurement provisions. Thus, the Court rejects this argument.

2.   *Whether Reimbursement is "Appropriate" under ERISA*

Having concluded that Plaintiff is entitled to seek reimbursement, the Court turns next to Defendant's argument that reimbursement is not "appropriate equitable relief" under ERISA because: (1) Defendant's recovery did not make him whole and Plaintiff has expressed no willingness to share in the attorney fees incurred by Defendant to obtain the settlement, (2) Plaintiff failed to act responsibly and promptly in protecting its reimbursement interest during the pre-suit negotiation process, and (3) there is no separate and distinct fund to which the settlement proceeds can be traced as required by Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006).

Defendant's first argument is foreclosed by the Supreme Court's recent decision in McCutchen. There, an employer sponsor of a health benefit plan filed suit under 29 U.S.C. § 1132(a)(3)(B) against a plan beneficiary who was injured in a car accident, received medical benefits from the plan, and later recovered money from third parties. McCutchen, 133 S. Ct. 1537 at 1543. The employer relied on a reimbursement clause as obligating the beneficiary to

10

reimburse the plan "any monies recovered from [a] third party." Id.  The beneficiary asserted

equitable defenses, arguing that, under 29 U.S.C. § 1132(a)(3), such defenses trumped the

reimbursement clause.  Id. at 1545.  The Supreme Court rejected this argument, holding that

neither of the asserted equitable defenses—the double-recovery and common-fund doctrines—

could "override the clear terms of a plan." Id. at 1543.  The Court reasoned that since the ERISA

plan documents were, in effect, a contract documenting the "expressed commitments" of the

parties, that "when parties demand what they bargained for in a valid agreement," one of the

parties cannot then ignore the plain language of the agreement by applying equitable defenses.

Id. at 1546.

 The Supreme Court went on to find, however, that an ambiguity in the plan about the

allocation of attorney's fees left "space for the common-fund rule to operate." Id. at 1549.  The

reimbursement provision gave the employer the first claim on "any monies recovered from [the]

third party," and the Supreme Court found "recovered" ambiguous in that it could refer to a

"recovery to which [the employer] has first claim [to] every cent the third party paid or, instead,

the money the beneficiary took away" after deducting the costs of recovery, including attorney

fees. Id. at 1549–50.  Based on this ambiguity, the Supreme Court found that "the common-fund

rule informs interpretation of [the] reimbursement provision," and construed "recovered" to

mean the beneficiary's net recovery, after deducting attorney fees. Id. at 1551.  In sum, the

McCutchen Court held that equitable principles cannot trump the clear language of an ERISA

plan; such principles may only be used to fill in the gaps in the event of ambiguous or absent

plan terms.

Here, the terms of the Plan expressly foreclose application of the make-whole doctrine, a variant of the double-recovery doctrine at issue in <u>McCutchen</u>.[1]  In relevant part, the SPD states:

> The Plan has a right to first reimbursement out of any recovery.  Acceptance of benefits from the Plan for an injury or illness by a covered person, without any further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, *will promptly be applied first to reimburse the Plan in full for benefits advanced* by the Plan due to the injury or illness and *without reduction for attorneys' fees, costs, expenses or damages* claimed by the covered person, and *regardless of whether the covered person is made whole* or recovers only part of his/her damages.

(DE 36-4 at 26) (emphasis added).  Unlike in <u>McCutchen</u>, this provision is unambiguous:  a Plan beneficiary's receipt of a third-party recovery triggers the beneficiary's responsibility to first reimburse "in full for benefits advanced by the Plan...without reduction for attorney fees...and regardless of whether the covered person is made whole."  In view of this plain language, the make-whole doctrine does not apply.

Importantly, the Court is not being called on to consider how the Plan's reimbursement provision would operate if the debt owed to the Plan exceeded the third-party settlement amount.  As such, the concern in <u>McCutchen</u> about discouraging injured beneficiaries from pursuing compensation is not present here because Defendant's settlement left an amount that—even after deducting all applicable attorney fees—readily exceeds the amount sought by the Plan as reimbursement.  <u>Compare</u> DE 39-2 at 4-5 (settlement disbursement sheet showing that

---

[1]  Under the make-whole doctrine, if an insured receives recovery for the same loss from more than one source, i.e., an insurer and a tortfeasor, it is only after the insured has been fully compensated for all of the loss that the insurer acquires a right to subrogation.  16 Couch on Ins. § 223:134.  As noted in <u>McCutchen</u>, the make-whole doctrine is a variant of the double-recovery rule, which limits an insurer's reimbursement to the share of settlement proceeds paying for medical expenses, with the insured keeping the rest to cover, for example, damages for loss of future earnings or pain and suffering.  <u>McCutchen</u>, 133 S.Ct. at 1545-46.

Defendant spent $200,000 in attorney fees (representing a 40% contingency fee) to secure his $500,000, leaving a real recovery of $300,000—well over the $121,044.02 sought by the Plan) with McCutchen, 133 S. Ct. at 1551 (beneficiary spent $44,000 (representing a 40% contingency fee) to get $110,000, leaving a real recovery of $66,000—less than the $66,866 sought by the employer, leading the Supreme Court to conclude that absent application of the common-fund rule, "the beneficiary is made worse off by pursuing a third party.... [W]e doubt if even [the employer] would want [that result]").

As a second argument, Defendant contends that reimbursement is not appropriate because the Plan failed to verify compliance with ERISA's anti-inurement provisions as requested by defense counsel in pre-suit communications and because the Plan unduly delayed in filing suit or otherwise taking steps to protect its reimbursement interest. As Plaintiff notes, this argument sounds in laches. To prove the equitable defense of laches, a defendant must show: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997).

The Court is unaware of any authority, and Defendant has cited none, that provides a basis to conclude that any failure by Plaintiff to verify anti-inurement information during the pre-suit negotiation process or that Plaintiff's timeframe for filing suit was unreasonable, inexcusable or prejudicial. There is no dispute that the parties, through counsel, exchanged a series of pre-suit communications for approximately eight months after Defendant received the settlement proceeds in an attempt to resolve Plaintiff's claim for reimbursement. There is also no dispute that Plaintiff filed suit against Defendant six months after the parties exchanged final settlement offers. And since ERISA does not specify a limitations period for a fiduciary's action to enforce

a reimbursement provision, this Court is guided by Florida's five-year statute of limitations for breach of written contract actions.  See Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1356 (11th Cir. 1998)(the forum state's statute of limitations for a simple contract action applies in an ERISA fiduciary's suit for reimbursement because "[i]n an ERISA action with no congressionally mandated limitations period, the district court must define the essential nature of the ERISA action and apply the forum state's statute of limitations for the most closely analogous action"); Fla. Stat. § 95.11(2)(b).  In view of the undisputed facts, the absence of authority to support Defendant's position, and Florida's five-year statute of limitations for closely analogous breach of contract actions, the Court rejects this second argument.

As a third and final argument, Defendant contends that the relief sought by Plaintiff is inappropriate because the settlement funds have been dissipated and, as such, the Plan cannot identify a fund separate and distinct from the Defendant's general assets as is required by Sereboff.  In support, Defendant submits a settlement disbursement sheet showing payments made out of the $500,000 settlement proceeds, including for attorney fees, costs, medical expenses, and satisfaction of a wide variety of liens (DE 39-3, Montanile Aff. Ex. A).[2] Defendant has also submitted an affidavit stating that after making the foregoing payments, "approximately $90,000" remained, most of which Defendant has "spent since the time of the

---

[2] Because the Court ultimately finds that any dissipation of settlement funds by Defendant is immaterial, the Court does not reach the parties' varying interpretations of this settlement disbursement sheet.  The Court notes, however, that the sheet raises more questions than answers.  For instance, it contains no dates for the various line-item disbursements and includes what appears to be erroneous calculations (the "Less: Medical expenses line" lists a deduction for "$1,213.22" but the listed medical expenses of $465.22, $398.00, $416.89, and $300.00 add up to $1,580.11).  Defendant has supplied no other documents, such as bank statements or receipts, to establish the settlement fund disbursement history.  Also noteworthy is Plaintiff's unchallenged statement that the "Blue Cross Blue Shield/Health Care Lien" for "$108,607.07" actually represents an amount "withheld from settlement to satisfy Plaintiff's reimbursement claim ..." (DE 41 at 7).

settlement in supporting [him]self and his daughter and in maintaining our home" (DE 39-3, Montanile Aff. ¶ 6).

In recent times, the Supreme Court has twice addressed the issue of what qualifies as "appropriate equitable relief" under ERISA, 29 U.S.C. § 1132(a)(3). In Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), the Supreme Court found that, because a fiduciary sought reimbursement of funds that were not in a beneficiary's possession but had instead been placed in a "Special Needs Trust" under California law, it was seeking "in essence, to impose personal liability on [the beneficiary] for a contractual obligation to pay money—relief that was not typically available in equity." Id. at 214. The Knudson Court's rationale rested on the form of restitution sought by the fiduciary—a money judgment from undifferentiated assets of the beneficiary; because such action is classified as "legal" rather than "equitable," the fiduciary's claim was not one for which ERISA provided a remedy. Id. at 218.

The Supreme Court later clarified this holding in Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006), which involved a plan fiduciary's suit to enforce plan terms for reimbursement out of a beneficiary's post-accident settlement proceeds. The Court explained that as long as a plan fiduciary seeks "its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [beneficiaries'] assets generally," the claim is equitable in nature. Id. at 363. Applying that principle, the Sereboff Court held that the "specifically identified fund" was the "recover[y] from a third party (whether by lawsuit, settlement or otherwise)" and that the "particular share of that fund to which [the fiduciary] was entitled was the portion of the total recovery which is due .... for benefits paid." Id. at 364.

The settlement funds in Sereboff had been paid directly to beneficiaries who agreed to hold the funds in a separate account to avoid commingling of assets until the litigation resolved.

15

Id. at 360.   Thus, the Supreme Court held, the fiduciaries sought recovery of particularly identifiable funds in the beneficiaries' possession, and the impediment to recovery in Knudson did not exist.   Id. at 362-63.   Moreover, the plan's reimbursement provisions created an "equitable lien by agreement" on any future recovery by the beneficiary for the same injury; i.e., the settlement funds.   Id. at 363.   In support of its analysis, the Sereboff Court relied on a century-old case for the proposition that the fiduciary did not have to trace the property back to its own possession in order to assert the lien based on the "familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."   Id. at 364–65, 367 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914)).

Of particular significance in the present case is Sereboff's rejection of an argument that the fiduciary's claim was not equitable because equitable restitution requires a strict tracing of the tainted assets.   First, the Court distinguished equitable restitution from equitable liens by agreement and affirmed that Barnes places no similar tracing requirement on the latter type of claim.   Id. at 365.   The Sereboff Court also refused to hold that Knudson crafted a new tracing requirement because Knudson described only "in general terms" a fiduciary's right to recover equitable restitution, and "[t]here was no need in Knudson to catalog all the circumstances in which equitable liens were available in equity..." Id. at 365.   Neither Knudson nor Sereboff, in other words, exhaust the universe of "appropriate equitable relief," so long as both the claim and the relief sought sound in equity.

Following Knudson and Sereboff, circuit courts—including the Eleventh—have enforced ERISA plan reimbursement provisions against third parties holding tort settlement funds achieved by plan beneficiaries.   Constructive trusts have been imposed to enforce a plan's

equitable lien by agreement on settlement proceeds held by a beneficiary's tort lawyer, Longaberger v. Kolt, 586 F.3d 459 (6th Cir. 2009); by a trustee of a beneficiary's wife's special needs trust, Admin. Comm. of Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834 (8th Cir. 2007); and by a mom serving as conservator for her teenage son. Admin. Comm. for Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223 (11th Cir. 2008).  In each of these cases, the courts held that, under Knudson and Sereboff, an equitable lien for reimbursement attached to settlement proceeds as soon as a settlement fund arose from the injuries requiring plan payments. See, e.g. Longaberger, 586 F.3d at 467.

As stated by the Eleventh Circuit:

> Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off. In such a case, he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate.

Horton, 513 F.3d at 1223 (quoting Restatement of Restitution § 160 cmt. g (1937)). The Horton court went on to conclude that:

> In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of a defendant. As required by Knudson, the [Plan] asserts title and right to possession of particular property that is in the hands of Mrs. Werber in her capacity as Joshua's conservator. The money Mrs. Werber holds in trust has been identified as belonging in good conscience to the [Plan] by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the defendant's possession. The fact that Mrs. Werber holds the funds as a third party does not defeat the [Plan's] claim. Under Knudson, Sereboff, and the other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient.  Had the Administrative Committee solely sued parties not in possession of the disputed funds, the claim would have failed under Knudson because it merely would have sought to impose personal liability on those parties.

Id. at 1228–29.

Importantly, <u>Sereboff</u> did not address the issue of a beneficiary's dissipation of assets because the funds there were placed in a separate account throughout the duration of the case. The Eleventh Circuit has similarly not had occasion to address this issue of dissipation. However, the overwhelming majority of circuit courts to have done so have held, after interpreting <u>Sereboff</u>, that a beneficiary's dissipation of assets is immaterial when a fiduciary asserts an equitable lien by agreement. See <u>Cusson v. Liberty Life Assurance Co. of Bos.</u>, 592 F.3d 215, 231 (1st Cir. 2010) (an ERISA plan administrator need not identify a "specific account in which the funds are kept or prove[ ] that they are still in [the beneficiary's] possession"); <u>Thurber v. Aetna Life Ins. Co.</u>, 712 F.3d 654, 664 (2d Cir. 2013)("[I]n the context of an equitable lien by agreement, rather than an equitable lien sought as a matter of restitution, all that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer."); <u>Funk v. CIGNA Grp. Ins.</u>, 648 F.3d 182, 194-95 (3d Cir. 2011)("dissipation of the funds [is] immaterial" if an equitable lien by agreement is in place); <u>ACS Recovery Servs., Inc. v. Griffin</u>, 723 F.3d 518, 526 (5th Cir. 2013) <u>cert.</u> <u>denied</u>, 134 S. Ct. 618 (2013)(employee need not have possession and control of funds for ERISA plan fiduciaries to seek recovery); <u>Longaberger Co. v. Kolt</u>, 586 F.3d 459, 466 (6th Cir. 2009)("[A]n equitable lien by agreement does not require tracing or maintenance of a fund in order for equity to allow repayment."); <u>Gutta v. Standard Select Trust Ins. Plans</u>, 530 F.3d 614, 621 (7th Cir. 2008)(equitable lien by agreement "is not dependent on the ability to trace particular funds [and group disability insurer] may bring its counterclaim under 29 U.S.C. § 1132(a)(3) even if the benefits it paid [the beneficiary] are not specifically traceable to [the beneficiary's] current assets because of commingling or dissipation"); <u>but</u> <u>see</u> <u>Bilyeu v. Morgan Stanley Long Term Disability Plan</u>, 683 F.3d 1083, 1093-95 (9th Cir. 2012)("Nothing in <u>Sereboff</u> suggests that a

fiduciary can enforce an equitable lien against a beneficiary's general assets when specifically identified funds are no longer in a beneficiary's possession.").

Following the majority view, the Court concludes that any dissipation of the settlement funds by Defendant is immaterial.  The present case is analogous to Sereboff in that an operative Plan provision clearly provides that the Plan is entitled to the reimbursement of benefits paid out in the event of a beneficiary's recovery from a third party:  "The Plan has the right to recover benefits advanced by the Plan to a covered person for expenses or losses caused by another party." (DE 36-4 at 26).  Further, "[t]he Plan has a right to first reimbursement out of any recovery" and "[a]cceptance of benefits from the Plan for an injury or illness by a covered person, without any further action by the Plan and/or the covered person, constitutes an agreement that any amounts recovered from another party by award, judgment, settlement or otherwise, and regardless of how the proceeds are characterized, will promptly be applied first to reimburse the Plan in full for benefits advanced by the Plan ..." (Id.).  These provisions put Defendant on clear notice that any third-party recovery he received "by award, judgment, settlement or otherwise" belonged, as a matter of first right, to the Plan.   By virtue of this clear pre-existing agreement, an equitable lien by agreement arose for the benefit of Plaintiff when Defendant obtained the third-party settlement under which he would receive monetary compensation for his accident-related injuries.   In other words, Defendant's right to receive money from the settlement immediately became subordinate to the Plan's lien.  The settlement proceeds represent an identifiable fund to which the Plan's lien attached and such proceeds belong "in good conscience" to the Plan to the extent of the medical expenses it paid on Defendant's behalf.  Such a conclusion is entirely consistent with the rationale of Sereboff and the "familiar rul[e] of equity" recited therein.

The Plan actively pursued its right to reimbursement first through a pre-suit process of negotiation and then—when that process proved unsuccessful—by filing this ERISA suit. That Defendant may have dissipated the funds over which Plaintiff holds a valid equitable lien by agreement is insufficient to void Plaintiff's right to enforce the reimbursement provision and the resulting equitable lien by agreement in Plaintiff's favor. See Funk, 648 F.3d at 194 (if "there was an equitable lien by agreement that attached to the [third-party benefits] as soon as [the beneficiary] received it, dissipation of the funds [is] immaterial").

Defendant argues that the Court should follow decisions out of the Middle District of Florida that run contrary to the majority of case law interpreting Sereboff in the context of an ERISA beneficiary's dissipation of assets. See, e.g., Jones v. Fed. Exp. Corp., 2013 WL 6038734 (M.D. Fla. Nov. 14, 2013); Epolito v. Prudential Ins. Co. of Am., 737 F.Supp.2d 1364 (M.D. Fla. 2010); Herman v. Met. Life Ins. Co., 689 F.Supp.2d 1316 (M.D. Fla. 2010). The Court respectfully disagrees with these decisions, which generally subscribe to the view espoused in Knudson that the dissipation of property such that "no product remains" means that a plaintiff cannot enforce an equitable lien upon other property of the defendant as such plaintiff's claim is only that of a general creditor. Jones, 2013 WL 6038734 at *25. Citing post-Sereboff Eleventh Circuit precedent for the proposition that "equitable relief under ERISA continues to require that the fiduciary identify specific assets still in the possession of the beneficiary[,]" these decisions conclude that a requirement of extant and identifiable specific property maintains a proper distinction "between equitable restitution and a money judgment." Id. at *22-23, 26 (citing Green v. Holland, 480 F.3d 1216, 1225–26 (11th Cir. 2007); Horton, 513 F.3d at 1226–27).

While reasonable jurists can certainly disagree on this issue, the Court is unpersuaded by the above Middle District of Florida decisions as they relate to dissipation of assets. As recognized by the Eleventh Circuit, Sereboff emphasized that the funds in issue "had been specifically identified (via the third party recovery provision of the plan itself); that the funds were still in the defendant's possession; and that it was undisputed that the plaintiff was entitled to them under the plan's terms." Holland, 480 F.3d at 1225 (citing Sereboff, 547 U.S. at 362-63). Here, the funds in issue have been specifically identified (via the provisions providing for Plaintiff's right to be reimbursed out of any third party recovery) in a specific amount ($121,044.02) as authorized by the Plan. These funds were entrusted first to Defendant's counsel, then to Defendant.

This Court's departure from the analysis in the Middle District of Florida cases turns on the requirement that the funds "still be in the defendant's possession." To conclude that Defendant's post-settlement dissipation of funds would defeat Plaintiff's reimbursement claim would be to wholly ignore the rationale of Sereboff. Without Defendant's injury, there would have been no Plan payments for his medical expenses or the later settlement. As discussed above, when Defendant agreed to the third-party settlement under which he would receive monetary compensation for his accident-related injuries, an equitable lien by agreement arose for the benefit of Plaintiff. The settlement proceeds represent an identifiable fund originally within the Defendant's possession to which the Plan's lien has attached and such lien is not dependent on the ability to trace the funds in real-time. To hold otherwise "would make § 1132(a)(3)(B)(ii) an empty promise" based on the important principle that "ERISA provides for equitable remedies *to enforce plan terms*." Sereboff, 547 U.S. at 363 (emphasis in original). To hold otherwise would also open the door to the type of "outrageous" conduct recently censured by the

Seventh Circuit, to wit, dissipation of settlement proceeds by a lawyer and client in knowing and willful ignorance of an ERISA plan's lien against the settlement proceeds.  Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis, 2014 WL 943412, *4 (7th Cir. Mar. 12, 2014).

IV.    CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff has a right under Summary Plan Description's "Other Party Liability Claims" provision to seek reimbursement for the monies it paid to cover Defendant's medical expenses arising from his 2008 car accident, for which Defendant has obtained a third-party settlement.  The Court further concludes that such reimbursement constitutes "appropriate equitable relief" within the meaning of ERISA, 29 U.S.C. § 1132(a)(3)(B).

Accordingly, the Court ORDERS that Plaintiff's Motion for Summary Judgment (DE 36) is GRANTED, and Defendant's Motion for Summary Judgment (DE 35) is DENIED.  Pursuant to Federal Rule of Civil Procedure 58(a), the court will enter a Final Judgment by separate order.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of March, 2014.


DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE